`
# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**TRAVIS LORENZO WOODSON**                                             **PLAINTIFF**

**V.**                                **CIVIL ACTION NO. 3:22CV205-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**            **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## PROCEDURAL HISTORY

The plaintiff, Travis L. Woodson, filed for benefits on January 3, 2017, alleging onset of disability commencing on October 24, 2016. The Social Security Administration denied the claim initially and on reconsideration. His insured status expired on December 31, 2020. The administrative law judge (ALJ) issued an unfavorable decision, but the case was remanded by the Appeals Council(AC) with directions. At the hearing, the plaintiff was allowed to amend his date of onset from October 19, 2018 to December 31, 2021 because of significant work activity after the alleged onset date. Following this hearing, the ALJ issued an unfavorable decision on

May 3, 2022. (Dkt. 7 p. 20- 34).[1] The Appeals Council denied the request for further review, and this timely appeal followed.

The ALJ determined Woodson had the following severe impairments: schizophrenia spectrum and other psychotic disorders and loss of vision in the right eye. The ALJ found Woodson retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels. He cannot perform jobs requiring depth perception; cannot climb ladders, ropes, or scaffolds; and cannot work at unprotected heights or work with or near hazardous machinery. He cannot work driving commercially. He is capable of understanding, remembering, and carrying out instructions necessary to perform routine and repetitive tasks. He can sustain concentration, persistence, and pace for routine and repetitive tasks for 2-hour periods in an 8-hour workday with minimal supervision and without extended breaks, but cannot engage in fast-paced production jobs where work tasks are performed sequentially in rapid succession. He can tolerate occasional interaction with co-workers and supervisors, but cannot work with the public. Woodson cannot perform tandem tasks as a regular part of his job. He can adapt to occasional changes in a routine work setting with minimal preparation and with minimal supervision. R. 25.

Based on the testimony of the vocational expert, the ALJ found that Woodson could perform his past relevant work as a cleaner at Step 4. He also made an alternate finding at Step 5 that Woodson could work as a presser or a price marker with 152,000 and 182,000 jobs respectively in the national economy. The ALJ, therefore, determined that Woodson was not disabled.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

**ISSUES AND ANALYSIS**

The plaintiff urges the court to find the ALJ failed to comply with the remand order from the Appeals Council when she did not do a separate *Singletary* analysis to determine Woodson can sustain employment over extended periods of time. *Singletary v. Bowen*, 798 F.2d. 818 (5th Cir. 1986). He also argues the ALJ failed to develop the record adequately.

**1. Capacity to Sustain Employment**

The ALJ found the plaintiff has suffered from long-term mental illness. The ALJ's decision after remand does not specifically address the plaintiff's capacity to sustain employment over time despite his mental illness. Woodson argues this is error because the AC remand order expressly mentioned the failure to include this analysis. Part of the argument is that, even aside from the remand order, it was error not to address this issue under *Singletary* and *Leidler v. Sullivan,* 886 F.291, 293 (5th Cir. 1989).

The Commissioner counters the remand order did not require the ALJ to address this subject specifically, though it did mention the first decision did not include sustaining employment. The Commissioner also argues that the ALJ was not otherwise required to address this issue separately, but rather that the capacity to sustain employment is subsumed within the RFC found by the ALJ. *Frank v. Barnhart*, 326 F.3d 618, 87 Soc.Sec.Rep.Serv. 256 (5th Cir.2003).

**A. AC Remand Order**

The court must first determine if the AC remand order required the ALJ to address Woodson's ability to maintain employment over time despite his mental illness. When a case is remanded, the ALJ must "take any action ordered by the Appeals Council and may take any

3

additional action that is not inconsistent with the remand order." 20 C.F.R. §§ 404.977(b) and 416.977(b). Here there are three substantive sections in the remand order. The first bulleted paragraph stated:

- The hearing decision found that the claimant's severe impairments included schizophrenia (Decision, Finding 3). The mental limitations in the decision's finding regarding the claimant's maximum residual functional capacity limit the claimant to jobs that require only occasional interaction with coworkers, non-confrontational supervision, and no interaction with the general public (Decision, Finding 5). ***The finding does not address whether claimant would have difficulty sustaining an ordinary routine and regular attendance at work or difficulty making independent work-related decisions***. Treatment notes indicate that claimant suffers from hallucinations (Exhibit B2F, page 5). The consultative examiner, Jane Eason, M.D., reported that the claimant has a history of a hospitalization for mental issues (Exhibit B8F, page 2). Dr. Eason also noted that the claimant has difficulty with concentration, was easily distracted by other stimuli, and cannot stay focused for any length of time (Exhibit B8F, page 6). The psychological consultative examiner, Michael Whelan, Ph.D., was of the opinion that the claimant has an IQ score near 70 (Exhibit 5F, page 3). The Administrative Law Judge found this opinion to be persuasive. Dr. Whelan's opinion suggests that the claimant may have difficulty with understanding. Therefore, additional consideration and a more comprehensive discussion of the impact of the claimant's mental limitations are required.
R. 167. (Emphasis added).

The plaintiff rests his argument on the highlighted sentence that noted the original decision did not discuss whether Woodson would have trouble sustaining regular attendance at work.

In the second bulleted paragraph, the AC discussed the ALJ's decision regarding an inadequate evaluation of a consultative examiner's opinions about Woodson's physical problems, including his sight.

In the final substantive paragraph the order requires:

Upon remand the Administrative Law Judge will:
• Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R.

> 404.1520a(c) and 416.920a(c).
> - Further consider the claimant's residual functional capacity during the entire period at issue, and provide rationale with specific references to evidence of record in support of assessed limitations (20 CFR 404.1545 and 416.945; Social Security Rulings 85 -15 and 96-8p). In so doing, consider all medical source opinions and articulate their persuasiveness (20 CFR 404.1520c and 416.920c). As appropriate, the Administrative Law Judge may request the medical sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b).
> - Further evaluate the claimant's ability to perform past relevant work at Step 4 of the sequential evaluation process pursuant to 20 CFR 404.1565 and 416.965.
>
> R 168.

Because this section of the order does not mention Woodson's capacity to sustain employment, the Commissioner argues that it is not part of the Appeal Council's directives to the ALJ, but rather, the first two paragraphs are analogous to court orders in setting out the findings and rationales for the order. Only in the last paragraph, the Commissioner argues, does the Appeals Council set forth what is being ordered, equating the "Upon remand" phrase to the " It is Ordered" language found in court orders. The case of *Dukes v. Astrue* supports the Commissioner's interpretation. Civil Action No. 2:10-cv-252-KS-MTP, 2011 WL 7139402 (S.D. Miss Dec. 21, 2011), *report and recommendation adopted*, 2012 WL 315947 (S.D. Miss. Feb. 1, 2012). In *Dukes* the magistrate judge recommended the decision be reversed because the ALJ failed to comply with the Appeals Council's remand instructions holding:

> The undersigned cannot ignore that the ALJ did not obtain supplemental evidence from a vocational expert as provided in the remand order, and there is no sufficient explanation in the record why he did not. The remand language does not leave room for an option to not call a vocational expert to elicit certain testimony.
> *Id*. at *8.

Quoting from *Partin v. Commissioner of Social Security*, Civil Action No. 2:08-cv-158-SAA, 2009 WL 3615074, at *1 (N.D. Miss. Oct. 27, 2009), the court found, " [t]he remand order before this court is quite specific…. The instructions issued were

5

introduced with the words ' [u]pon remand the administrative law judge *will*….." *Dukes*, 2011 WL 139402 at * 8.

Accepting the reasoning of these cases, the court finds that the ALJ's failure to provide a *Singletary* finding was not a violation of the remand order.

### B. Was a Sustainability Finding Required under *Singletary?*

The plaintiff also argues that the ALJ was required under *Singletary v. Bowen, supra,* to expressly address whether the plaintiff could sustain any employment he was able to find, given his long-standing mental health issues. Looking at the facts of this case and applicable case law, the court finds no error.

In assessing a claimant's RFC, an ALJ must always consider whether a claimant has the capacity to sustain work activity over time. Consideration of this issue is normally implicit in and subsumed within the assessment of a claimant's RFC. A person can qualify as disabled if unable to sustain a job for a significant time period, even if sometimes capable of working in short spurts. "Nevertheless, an occasion may arise ... where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required." *Frank*, 326 F.3d at 619.

In *Singletary* the claimant had a ten-year history of severe mental illnesses, variously diagnosed as schizophrenia, an antisocial personality, inadequate personality, and passive-aggressive personality. During that time Singletary led a rootless existence, wandering through three different states. He was sometimes homeless and sometimes stayed with relatives. He spent significant time in different hospitals and mental institutions. *Singletary*, 798 F.2d at 820. His medical providers all agreed Singletary had serious long term mental impairments and a poor

6

prognosis. *Id.* He had limited intellectual ability and his doctors thought he was unlikely to be able to return to employment *Id.* at 822. His work history was limited to sporadic, short-term employment. His own relatives would no longer hire him. *Id.* But this spotty employment history was enough to convince the ALJ Singletary was not disabled. The ALJ found his mental conditions were not severe enough to preclude employment "for more than short periods of time — far less than twelve continuous months." *Id.* at 821. The court reversed the Commissioner's decision, explaining that Singletary's sporadic, short-term employment did not preclude a determination of disability. The court held the ALJ erred in failing to consider and address whether Singletary had the capacity to sustain any employment he might obtain. *Id.* "A finding that a claimant can engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Id.* at 822. With his years of hospitalizations the court found his impairment had met the duration requirement. *Id.* The court found the statute does not *require* that a claimant be unable to engage in any work activity for an entire twelve-month period, but instead their impairment must meet the duration requirement.

In a similar case, John Leidler had been diagnosed a paranoid schizophrenic almost two decades before his application. He was under constant medical supervision after his diagnosis and medications only partially controlled his symptoms. His work history showed only sporadic, short-term employment. The court reversed the Commissioner's denial of benefits finding ALJs had to consider and expressly address the ability to sustain employment because a claimant may be able to engage in substantial gainful activity, but not be able to sustain employment based on the nature of their illnesses. *Leidler,* 885 F.2d at 292. "A determination that a person is capable

7

of engaging in substantial gainful activity depends on … the individual [having] some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, 'once hired, of keeping the job.'" *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (quoting *Wingo v. Bowen,* 852 F.2d 827, 831 (5th Cir.1988)).

Later cases, however, point out that there are only limited circumstances in which an ALJ must separately address the claimant's capacity to maintain employment. In *Tutor v. Kijakazi,* Civil Action No.: 3:22-CV-60-DAS, 2022 WL 11902194 (N.D. Miss. October 20, 2022), the plaintiff complained about the absence of a *Singletary* analysis. But *Singletary* only applies in cases where the claimant cannot maintain employment "based on intermittently occurring symptoms of *disabling intensity* and if the adjudicator does not address this evidence as it relates to the claimant's ability to perform work on a regular and continuing basis." *Id.* at *2 (quoting *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003)). In Tutor's case there was some fluctuation and worsening in her symptoms from financial stresses and the anniversary of her husband's death. During this exacerbation one therapist suggested inpatient treatment would be beneficial, but she was unable to afford this treatment. Medications ameliorated her symptoms, and the decision addressed her testimony about her claims of sometimes crashing for two to three days at a time. This court found no error because her treatment records did not demonstrate the level of disability shown in *Singletary*. Tutor's circumstances represented the more typical case in which the sustainability issue was incorporated into and subsumed into the RFC determination.

In this case, Woodson was diagnosed in 2012 with schizophrenia and was hospitalized at that time. There were no other hospitalizations or emergency room visits in the record though Woodson has remained in treatment. He is not troubled by schizophrenic symptoms when he

8

consistently takes his prescribed medications though he complained of drowsiness from one of the medications. He also testified that he was compliant with his medications from the amended onset date forward. The ALJ considered this testimony though finding that his subjective complaints were not entirely consistent with the record. The original alleged date of onset was amended from 2018 to the end of 2021 because of significant work activity after the initial alleged onset date, during which time Woodson was on his medication. The ALJ detailed Woodson's testimony where this claimant faulted medication side effects and mental problems for his being fired from his jobs after the initial onset date.

The record does not show intermittent symptoms of a disabling intensity, but does show consideration of the evidence in the record, both the claimant's testimony, treatment records, and reports of consultative examiners that would potentially impact Woodson's capacity to maintain employment. The court, therefore, finds no error for not making separate findings under *Singletary* and its progeny.

## 2. Did the ALJ Fail to Develop the Record?

Woodson argues that the ALJ committed prejudicial error in failing to develop the record, citing among other authorities, *Hardine v. Kijakazi,* , No. 21-60226, 2022 WL 2070399 (5th Cir. June 8, 2022).

The Social Security Administration has assumed "a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). If an ALJ decides a case but lacks sufficient facts to make an informed decision, the ALJ has erred for failing to develop the record.

9

The plaintiff argues the ALJ should have ordered a consultative examination in this case. A CE is required if necessary to "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the agency] to make a determination or decision on [a] claim." *Id.* at *2 (citing 20 C.F.R. § 404.1519 a (b)). However, the failure to order a consultative examination or to take other steps to develop the record is reversible only if the claimant can show they were prejudiced by the failure. *Webster*, 19 F.4th at 720. "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

In *Hardine,* the failure was prejudicial because the ALJ found the opinions of the treating physician were unclear as to the cause of her limitations and had not been specific about her functional limits. As a result the ALJ gave those opinions little to no weight. That failure was prejudicial because a CE could have confirmed or clarified Hardine's limitations, altering the ALJ's dismissal of the treating physician's opinions. Additionally Hardine testified that she suffered from depression and anxiety, but the administrative record showed no definitive diagnosis. The ALJ dismissed this testimony but should have ordered a CE to determine if Hardine suffered from anxiety and depression and the extent of any impairment. *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2,3 (5th Cir. June 8, 2022).

Here the ALJ had voluminous medical records and reports that were reviewed and discussed in detail in the decision. The sheer volume of the records does not necessarily preclude either a gap in needed proof nor an inconsistency in the record needing clarification, but the plaintiff's brief identifies neither. The plaintiff also does not specify how he has been prejudiced by the failure of the ALJ to order a further consultative examination. Consequently, the court finds this assignment unpersuasive.

10

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is affirmed.

**SO ORDERED AND ADJUDGED** this the 4th day of May, 2023.

                                        **/s/ David A. Sanders**
                                        **U.S. MAGISTRATE JUDGE**